

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| CHRISTOHPER CAMERON AND KATIE CAMERON, AS GUARDIANS AD LITEM FOR S.C., A MINOR, <br><br> Plaintiff, <br><br> vs. <br><br> SISSETON SWIMMING POOL ASSOCIATION, INC.; CITY OF SISSETON, SOUTH DAKOTA; AND DAVID STAUB, <br><br> Defendants. | 1:20-CV-1004-CBK <br><br><br> **MEMORANDUM AND ORDER** |

## I. BACKGROUND

S.C., a 10-year-old girl living in West Fargo, North Dakota, ventured to Sisseton in July 2019 where she went swimming in a pool owned and managed by the Sisseton Swimming Pool Association ("SSPA"). Tragically, shortly thereafter, S.C. began feeling unwell. After enduring gastrointestinal symptoms, including abdominal cramps and diarrhea, she would ultimately be diagnosed with an *E. coli* 0157:H7 infection. This strand of *E. coli* can be particularly harmful.

Some of those who receive an *E. coli* 0157:H7 infection go on to develop hemolytic uremic syndrome ("HUS"), which occurs when small blood vessels in one's kidneys becomes damaged and inflamed, potentially leading to clots in the vessels. These clots inhibit the proper filtering system in the kidneys, leading to potentially life-threatening kidney failure. While anyone can develop HUS, it is most prevalent in young children. Sadly, S.C. was one such child. She was hospitalized for eight weeks over the summer of 2019 because of her *E. coli* 0157:H7 infection and HUS illness. S.C. has endured kidney failure, a cervical arterial bleed, severe colitis, pancreatitis, among other

complications. S.C. has required dialysis treatments, which are an eight-hour round trip from her home in West Fargo twice a week for three-hour sessions in Minnesota. Today, S.C.'s kidneys function at approximately 25% and must go through lab work twice a month. Before the COVID-19 pandemic wrought substantial disruptions to countless children's educations, S.C. missed almost a full semester of school because of this illness.

Plaintiffs Christopher and Katie Cameron, as guardians ad litem for S.C. ("plaintiffs"), filed suit on January 24, 2020 against the SSPA, the City of Sisseton ("the City," "defendant"), and Dr. David Staub, the President of the SSPA and longtime financial supporter of the pool. Doc. 1. Defendant City filed a motion for partial summary judgment before the Court on September 9, 2020, pertaining to plaintiffs' second claim centered on premises liability. See DEFENDANT CITY OF SISSETON, SOUTH DAKOTA'S MOTION FOR PARTIAL SUMMARY JUDGMENT, doc. 28. The Court denied defendant's motion. ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT, doc. 38. Defendant brought again before the Court a motion for summary judgment, this time on both counts brought by plaintiffs, on June 22, 2021. DEFENDANT CITY OF SISSETON, SOUTH DAKOTA'S MOTION FOR SUMMARY JUDGMENT, doc. 49. A response to defendant's motion was filed by plaintiffs on July 13, 2021. PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT CITY OF SISSETON'S MOTION FOR SUMMARY JUDGMENT, doc. 58. Defendants replied to plaintiffs' response on July 30, 2021. DEFENDANT CITY OF SISSETON, SOUTH DAKOTA'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, doc. 64.

## II. DISCUSSION
### A. Legal Standard
#### 1. *Standard of Review*

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Knutson v. Schwan's Home Serv., Inc., 711 F.3d 911, 913 (8th Cir. 2013). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry
> of summary judgment . . . against a party who fails to make a showing

> sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (internal quotations omitted).

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). That is, to make summary judgment inappropriate, there must be a factual dispute concerning facts the existence or nonexistence of which would "be outcome determinative under [the] prevailing [substantive] law." Grey v. City of Oak Grove, Missouri, 396 F.3d 1031, 1034 (8th Cir. 2005).

Thus, in accordance with Rule 56(c), the party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Upon such a showing, the burden shifts to the non-movant to present affirmative evidence, beyond the pleadings, showing that a genuine issue of material fact exists. Anderson, 477 U.S. at 256–57. To meet its burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the non-movant must be able to "show there is sufficient evidence to support a jury verdict in [its] favor." Nat'l Bank of Com. v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir. 1999). After this exercise, "we view the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party." Northport Health Servs. of Arkansas, LLC v. Posey, 930 F.3d 1027, 1030 (8th Cir. 2019).

2. *South Dakota Law Governs Substantive Issues*

The current dispute is before this court on the basis of diversity of citizenship. With the exception of venue transfers, "[f]ederal courts sitting in diversity apply state substantive law." Morgantown Machine & Hydraulics of Ohio, Inc. v. Am. Piping

Prods., Inc., 887 F.3d 413, 415 (8th Cir. 2018) (*citing* Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). See also Miller v. Honkamp Krueger Fin Servs., 9 F.4th 1011, 1016 (8th Cir. 2021) ("A federal court sitting in diversity applies state substantive and federal procedural law.").

### 3. *Parallel State Litigation is not Binding Upon this Court*

In addition to S.C.'s case in this Court, two other children brought suit against the City in Roberts County before a State Circuit Court judge. See Adams v. Sisseton Swimming Pool Assoc., 54CIV20-0008 (5th Jud. Cir. S.D.), doc 54-7; Adams v. Sisseton Swimming Pool Assoc., 54CIV20-0009 (5th Jud. Cir. S.D.), doc. 54-8. The Court has already granted defendant Staub's motion to take judicial notice of these parallel state court proceedings, specifically to recognize that Roberts County dismissed claims against Dr. Staub. See doc. 26. Here, the Court still acknowledges the parallel state proceedings. But plaintiffs rightly point out that the legal findings of the state trial court are not binding upon this Court as it seeks to interpret South Dakota law. When "'interpret[ing] state law, [a court's] role is to follow the law as decided by that state's highest court. Absent clear direction from that court, [the court] must conduct [its] analysis as a predictive exercise, interpreting state law in the manner [it] believe[s] the state's highest could would rule.'" Grand River Coop. Grazing Assoc. v. United States, 2020 WL 3542273 at *2 (D.S.D.) (*unpublished*) (alterations in original) (*quoting* Graham v. CIOX Health, LLC, 952 F.3d 972, 974 (8th Cir. 2020)). This Court can turn to the proceedings in the Fifth Judicial Circuit litigation when interpreting how the South Dakota Supreme Court would rule in determining an unanswered legal question, but is not bound by its findings.

### B. Whether Defendant may be Found Liable Under Premises Liability

Defendant moves for summary judgment on plaintiffs' claim that it can be held liable under a premises liability theory as the primary financial benefactor of the SSPA. The City argues that because it holds no control, operation, lease, or other indicia of possession of the pool, it cannot be found liable under such a theory. Plaintiffs in turn

4

posit that because of the defendant's substantial financial contributions to the SSPA, it must hold possession.

"As a general rule, the possessor of land owes an invitee or business visitor the duty of exercising reasonable or ordinary care for the benefit of the invitee's safety, and the possessor is liable for the breach of that duty." Mitchell v. Ankney, 396 NW2d 312, 313 (S.D. 1986). See also Johnson v. Matthew J. Batchelder Co., Inc., 779 NW2d 690, 693 (S.D. 2010) ("The duty of reasonable care requires keeping the property reasonably safe . . ."). The foundation of premises liability is "'based on possession and control.'" Englund v. Vital, 838 NW2d 621, 627 (S.D. 2013) (*quoting* Clauson v. Kempffer, 477 NW2d 257, 259 (S.D. 1991)). In Clauson v. Kempffer, the South Dakota Supreme Court turns to the Second Restatement of Torts for defining who in fact is a land possessor. See Clauson, 477 NW2d at 259 n.1 (*citing* RESTATEMENT (SECOND) OF TORTS § 328E). There are two avenues to being considered the possessor of land: "(a) a person who is in occupation of the land with intent to control it or (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it . . ." Id. (*quoting* RESTATEMENT (SECOND) OF TORTS § 328E). For plaintiffs to prevail on their premises liability theory, defendant must satisfy one of the two elements. The Court will discuss each in turn.

The Restatement's Comment advises courts that "possession" has often been "given various meanings in the law." RESTATEMENT (SECOND) OF TORTS § 328E, comment *a*. However, for purposes of *this* definition of possession, "[i]t is used [] strictly in the factual sense." Id. See also Isler v. Burman, 232 NW2d 818, 821 (Minn. 1975) (Supreme Court of Minnesota citing favorably to the Restatement's comment for offering possession a strictly factual meaning for premises liability).

First, plaintiffs fail to offer substantive evidence that the City was in occupation of the land. Dr. David Staub of the SSPA was clear in his deposition: the City holds no ownership, lease, or control of the pool's property. See Staub Deposition, doc. 54-2 at 116–22. Defendant contributes a large proportion of the SSPA's budget, but that on its own does not constitute ownership of the property when it holds no say over personnel,

5

operations, chemicals used in the pool, chlorine levels at the pool, appropriate sanitizer levels for the pool, or other critical aspects that could provide indicia of occupation of the pool. See id. The City's employees do not monitor the day-to-day operations of the SSPA and do not venture onto the pool's grounds in official capacities. Rather, the SSPA – a separate entity – occupies the land where S.C. was allegedly sickened and received an E. coli O157:H7 infection.

The second route to possession is also not satisfied in this instance. Here, the SSPA currently occupies the land, and presumably continues to occupy the property. Because there is a current occupier of the property, plaintiffs fail as a matter of law to show the City held possession of the land.

Plaintiffs also argue that because the City provided the majority of the pool's budget through its contributions, there can be "no question that the City's financial dominance of the pool placed it in a position to control the pool." PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT CITY OF SISSETON'S MOTION FOR SUMMARY JUDGMENT, doc. 58 at 18. This is not the case. Mere contributions – even generously large donations – to a 501(c)(3) cannot suffice to establish premises liability. To hold otherwise would infer that generous benefactors to nonprofits must withstand personal liability for alleged impropriety of those charitable causes simply because he or she was the primary benefactor. This stretches premises liability beyond its logical contours. It would result in the old axiom that "no good deed goes unpunished." Without evidence of the City using its influence to manage the operations of the pool, the personnel of the SSPA, the Human Resources policies of the SSPA, or other critical factors that can constitute control, the mere fact the City provided the bulk of the pool's budget cannot establish possession.

Bearing in mind the question of possession in this context is used "strictly in the factual sense," the Court finds the City is not the possessor of the land. RESTATEMENT (SECOND) OF TORTS § 328E, comment a. However, the Court proceeds to analyze whether an appropriate exception applies in this instance to establish premises liability.

Defendant cites to this Court's decision in Ebaugh v. PetSmart, Inc., where we found an exception to the general rules surrounding premises liability where a third-party steps into the shoes of the actual possessor. In Ebaugh, Judge Schreier found – assuming the State Supreme Court would likely adopt § 384 of the Second Restatement – that the Restatement's analysis that an independent contractor who "erects a structure or *creates any other condition on the land* is subject to the same liability . . . as though he were the possessor of the land, for physical harm caused to others upon and outside the land by the dangerous character of the structure." Ebaugh v. PetSmart,Inc., 2012 WL 2576217 (D.S.D.) (*unpublished*) (emphasis in original) (*quoting* RESTATEMENT (SECOND) OF TORTS § 384). While the rationale of § 384 applies well to the independent contractor context, where the contractor is stepping into the shoes of the actual possessor when erecting a dangerous structure on the property, it does not correlate to this matter. The City, as the Court has already explained, held no authority in determining proper chlorine levels, chemicals used in the pool, or how to properly sanitize the pool. Here, the dangerous condition on the property is the alleged improper adequacy of sanitizing the pool. Because the City is not responsible – and provides no input – on the proper sanitization requirements for the pool, the exception under § 384 is inapplicable.

Plaintiffs point the Court's attention to three out-of-state opinions for the proposition that defendant may be found liable for the dangerous condition – the allegedly contaminated pool – because it assumed "control and responsibility for the premises, even if the defendant did not own or physically occupy the property." PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT CITY OF SISSETON'S MOTION FOR SUMMARY JUDGMENT, doc. 58 at 16. First, plaintiffs cite the Supreme Court of Texas's opinion in United Scaffolding, Inc. v. Levine, where the Court noted adequate control over property turns on "whether [defendant] retained a sufficient right of control over the work site's scaffold such that it had the responsibility to remedy [the alleged dangerous condition]." United Scaffolding, Inc. v. Levine, 537 SW3d 463, 475 (Tex. 2017). As the Court has already made bare: defendant did *not* hold any control over the SSPA's

7

sanitization process for the pool, negating any plausible linkage to a premises liability claim.

The plaintiffs also cite to the District Court of Appeal of Florida's decision in Trainor v. PNC Bank, National Association, which held that "ownership of [a] property is not the determining factor." Trainor v. PNC Bank, Nat'l Ass'n, 211 So3d 366, 368 (Fla. Dist. Ct. App. 2017). However, plaintiffs fail to cite the subsequent sentence in the Trainor holding: "[r]ather, it is the failure of a person who is in *actual possession and control* . . . to use due care to warn or to exclude licensees and invitees from areas known to the possessor to be dangerous because of operations, activities, or conditions." Id. (*citing* Haynes v. Lloyd, 533 So2d 944, 946 (Fla Dist. Ct. App. 1988)). But as the Court has already noted, there was no *actual possession* or *control* of the City to direct the operations of the SSPA when ensuring the proper safety of the pool. The last out-of-state opinion plaintiffs cite to, Nagel v. Northern Indiana Public Service Company, defeats their argument in the very holding they quote: "if there was evidence that another party was in a better position to prevent the harm that occurred" then it could be found at fault under premises liability. Nagel v. N. Indiana Pub. Serv. Co., 26 NE3d 30, 44 (Ind. Ct. App. 2015) (*quoting* McCraney v. Gibson, 952 NE2d 284, 288 (Ind. Ct. App. 2011)). But the City cannot be in a better position than the SSPA when it was not responsible for the maintenance or operation of the pool, nor its chlorine or other chemical intake. Thus, the Indiana Court of Appeals' decision is also immaterial to the matter at hand.

Questions of possession under premises liability theories often arise when third parties bring suit against landlords for allegedly dangerous actions wrought upon tenants resulting from landlord negligence. See, e.g., Englund v. Vital, 838 NW2d 621 (S.D. 2013); Heppler v. Thomson Newspaper, Inc., 105 F.3d 1212 (8th Cir. 1997) (applying South Dakota law); Hendrix v. Schulte, 736 NW2d 845 (S.D. 2007). Here, the connection between the City and the alleged contamination at the pool is more attenuated and is insufficient to establish premises liability. Where a landlord may not be in actual possession of the dwellings, they own the units, insure the buildings, owe responsibilities to tenants to provide safe and adequate housing, among a myriad of other obligations not

applicable in this instance. Premises liability cannot be extended in such a way to contributors to 501(c)(3)'s where no semblance of control follows their donations.

Because the City merely contributed to the SSPA while retaining no ownership or authority over the pool and its operations, as a matter of law plaintiffs cannot plead a premises liability theory against the defendant.

### C. Whether Defendant may be Found Liable under Traditional Negligence Standards

"'Negligence is the breach of a duty owed to another, the proximate cause of which results in an injury.'" Lindblom v. Sun Aviation, Inc., 862 NW2d 549, 555 (S.D. 2015) (quoting Englund v. Gital, 828 NW2d 621, 627 (S.D. 2013)). Critical to any negligence inquiry is whether there was in fact a duty owed by the alleged tortfeasor. See Katon v. United States, 2018 WL 4082510 at *2 (D.S.D.) (*unpublished*) ("'The existence of a duty owed by the defendant to the plaintiff, which requires the defendant to conform to a certain standard of conduct in order to protect the plaintiff against unreasonable risks, is elemental to a negligence action.'" (*quoting* Janis v. Nash Finch Co., 780 NW2d 497, 500 (S.D. 2010))). While the question of whether there was a breach of a duty belongs within the confines of the jury, the Court decides as a matter of law whether there was first a duty owed to the injured party.

Elemental to negligence case law is that *possessors* of land "'owe[] an invitee or business visitor the duty of exercising reasonable or ordinary care.'" Janis, 780 NW2d at 501 (emphasis added) (*quoting* Mitchell v. Ankney, 396 NW2d 312, 313 (S.D. 1986)). Here, the critical question is whether the City, who does *not* posses the land, may nevertheless owe a duty to S.C.

To determine whether the City owes S.C. a duty, South Dakota courts "examine whether 'a relationship exists between the parties such that the law will impose upon the defendant a legal obligation of reasonable conduct for the benefit of the plaintiff.'" First Am. Bank & Trust, N.A. v. Farmers State Bank of Canton, 756 NW2d 19, 26 (S.D. 2008) (*quoting* Casillas v. Schubauer, 714 NW2d 84, 88 (S.D. 2006)). Duties can be owed "'by

statute or common law.'" Decker v. Deerfield Hutterian Brethren Inc., 2017 WL 980269 at *6 (D.S.D.) (*unpublished*) (quoting Highmark Fed. Credit Union v. Hunter, 814 NW2d 413, 415 (S.D. 2012)).  A duty can "also [be] based upon foreseeability." First Am. Bank & Trust, N.A., 756 NW2d at 26.  Finally, courts must balance "public policy considerations" and the "relationship of the parties." Jonson v. Hayman & Assocs., Inc., 867 NW2d 698, 702 (S.D. 2015) (internal citations omitted).

Here, the Court reiterates the critical point that the City *did not possess* the pool or the property on which it sat.  See *supra* II.B.  ("[The City] holds no ownership, lease, or control of the pool's property. . . [and] holds no say over personnel, operations, chemicals, used in the pool, chlorine levels at the pool, appropriate sanitizer levels for the pool, or other critical aspects that could provide indicia of occupation of the pool."). See Staub Deposition, doc. 54-2 at 116–22).  Without possessing or controlling the very pool at the center of this suit, it is a far reach to impose liability on defendant for the alleged negligence of a non-profit association it did not direct. Nevertheless, the Court explains why other factors do not warrant liability on the part of the City.

Plaintiffs stress the appropriateness of imposing liability on the City for any allegedly negligent transgression on the part of the SSPA because it is foreseeable that pathogenic bacteria such as *E. coli* may infect swimmers without proper oversight.  But plaintiffs conflate being the primary benefactor to a 501(c)(3) with obligations to prevent possibly foreseeable risks that are outside the control of the City; the Court cannot and will not impose liability because of defendant's donative actions to the SSPA with "no strings attached." Staub Deposition, doc. 54-2 at 118.

Additionally, public policy counsels against a finding of such liability.  Plaintiffs ask this Court to extend liability to primary benefactors of nonprofit entities, which the Court firmly rejects.  Further, South Dakota's Supreme Court has been clear in its unease expanding duty beyond its logical reach.  In Smith v. Lagow Construction & Developing Company, the Court rejected finding a general duty on the part of landowners to protect their tenants from crime – when no affirmative acts by the landlords caused the increased risk of crime –, recognizing "proprietors ought not to bear the wholesale responsibility of

protection simply because their tenants, like other members of society, become crime victims." Smith v. Lagow Const. & Developing Co., 642 NW2d 187, 190 (S.D. 2002). Smith is analogous to this instance: South Dakota courts are leery to offer liability on such attenuated relationships stretching beyond the confines of traditional duty analysis. Under State law, the City cannot be found to hold a duty to third parties benefitting from its contributions to the SSPA. To do otherwise would be to impose "wholesale responsibility of protection" simply through charitable contributions to a 501(c)(3). Id.

Plaintiffs put great weight on the fact that the City *could* control the actions of the SSPA "as the entity most responsible for the very existence of the pool" if it chose to do so. PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT CITY OF SISSETON'S MOTION FOR SUMMARY JUDGMENT, doc. 58 at 8. They are probably right. However, plaintiffs are wrong in stating that the "City knew it had control over the pool." Id. at 9. To put it correctly, the City knew it could *assume control* if it wanted. But the fact it could, yet chose not to do so, is insufficient for a legal finding of duty.

The Court takes note that the SSPA providing the residents of Sisseton a pool is distinguishable from a city contracting out necessary services to private or non-profit actors. While a pool certainly can boost the quality-of-life of a city, it is different from contracting out jail services or garbage disposal to private actors. Were this to be a public necessity, plaintiffs would have a stronger claim for a finding of duty. Here, though, the City owed no duty as a municipality to its residents to offer a pool or other recreational facilities. Instead, this is a "quality of life asset." Jaspers Deposition, doc. 60-4 at 23. This distinction is critical for where the defendant chooses to contribute its funds for non-necessary donations to improve leisure opportunities for its residents. For example, if the City donated funds to a non-profit adult sports league or after-school mentorship program for vulnerable youths, and was the primary benefactor, plaintiffs' arguments would imply a finding of duty on the part of the City in its efforts to boost the quality of life of its residents. Liability cannot be attenuated this far under South Dakota law.

### III. CONCLUSION

Because the Court declines to extend liability to benefactors of 501(c)(3)'s for alleged negligence on the parts of recipients of such contributions when the benefactor holds no control, operation, or authority over how the funds are used, both claims against defendant should be dismissed.

IT IS HEREBY ORDERED that defendants' motion for summary judgment, doc. 49, is granted. There are no genuine issues of material fact as to the City of Sisseton.

DATED this 30th day of September, 2021.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge